## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| **JARED COHEN** | : |
| **34 TREE TOP DRIVE** | : |
| **SPRINGFIELD, NEW JERSEY 07081** | : |
| and | :     **CIVIL ACTION** |
| **BRUCE & BRENDA COHEN, h/w** | :     **NO. 04-CV-** |
| **34 TREE TOP DRIVE** | : |
| **SPRINGFIELD, NEW JERSEY 07081** | : |
| | : |
| **Plaintiffs** | : |
| vs. | : |
| | : |
| **MUHLENBERG COLLEGE** | : |
| **2400 CHEW STREET** | : |
| **ALLENTOWN, PENNSYLVANIA 18104** | : |
| and | : |
| **MUHLENBERG COLLEGE BOARD OF** | : |
| **TRUSTEES** | : |
| **2400 CHEW STREET** | : |
| **ALLENTOWN, PENNSYLVANIA 18104** | : |
| and | : |
| **PAYTON R. HELM** | : |
| **2400 CHEW STREET** | : |
| **ALLENTOWN, PENNSYLVANIA 18104** | : |
| and | : |
| **JAMES STEFFY** | : |
| **2400 CHEW STREET** | : |
| **ALLENTOWN, PENNSYLVANIA 18104** | : |
| and | : |
| **ANNE HOCHELLA** | : |
| **2400 CHEW STREET** | : |
| **ALLENTOWN, PENNSYLVANIA 18104** | : |
| and | : |
| **KEN LUPOLE** | : |
| **2400 CHEW STREET** | : |
| **ALLENTOWN, PENNSYLVANIA 18104** | : |
| and | : |
| **RUDOLPH EHRENBERG** | : |
| **2400 CHEW STREET** | : |
| **ALLENTOWN, PENNSYLVANIA 18104** | : |
| | : |
| **Defendants** | : |

_____

## COMPLAINT

## INTRODUCTION

In the fall of 2002, Jared Cohen, as a result of a complaint made to authorities at defendant, Muhlenberg College, by a young woman, Abbe Bossert, a student at Muhlenberg College, was accused of the heinous crime of rape.

Jared was stunned.  No such incident had occurred, and there was no credible evidence that it had.  Muhlenberg officials ignored Jared's assertions of innocence and proceeded to sponsor and encourage a grossly inadequate administrative investigation by untrained personnel more interested in an orchestrated result than in learning the truth.  Likewise, the Muhlenberg officials were bullied by the parent of Ms. Bossert into punishing Jared without just cause. Jared was denied rights guaranteed by the United States Constitution, including the right to counsel at a student hearing that had serious criminal implications.  Such a tainted procedure indicated that Muhlenberg had full appreciation of its actions and violated fundamental notions of human decency.  Jared Cohen and his parents who have incurred substantial financial damage as the result of this incident, are seeking monetary damages in excess of $150,000.00. Plaintiffs demand a Jury trial.

## PARTIES

1.      Plaintiff, Jared Cohen ("Jared") is an adult citizen and resident of the State of New Jersey residing at 34 Treetop Drive, Springfield, New Jersey.

2.      Plaintiffs, Bruce and Brenda Cohen ("The Cohens") are adult citizens and residents of the State of New Jersey residing at 34 Treetop Drive, Springfield, New Jersey.

3.      Defendant, Muhlenberg College ("MC") is a private institution of higher learning which receives federal funding, provides post-secondary education and operates as

such with a principal place of business located at 2400 Chew Street, Allentown, Pennsylvania. MC operates under the overall jurisdiction of the Board of Trustees.

4.      Muhlenberg College Board of Trustees ("MC") is the governing body of MC and is located at 2400 Chew Street, Allentown, Pennsylvania.

5.      Payton R. Helm is the President of Muhlenberg College located at 2400 Chew Street, Allentown, Pennsylvania.

6.      James Steffy was the President of Muhlenberg College located at 2400 Chew Street, Allentown, Pennsylvania when the facts and circumstances giving rise to the subject Complaint took place.

7.      Ann Hochella is and was the Vice President of Muhlenberg College located at 2400 Chew Street, Allentown, Pennsylvania, at all times relevant hereto.

8.      Ken Lupole is and was the Director of Campus Safety and Security of Muhlenberg College located at 2400 Chew Street, Allentown, Pennsylvania, at all times relevant hereto.

9.      Defendant, Rudolph Ehrenberg, is an individual who was, at all times relevant hereto, employed as the Dean of Students for Muhlenberg College and whose regular place of employment at all times relevant hereto was 2400 Chew Street, Allentown, Pennsylvania.

10.     At all times material hereto, defendant, Ehrenberg acted individually and as the agent, servant and/or employee of defendant, Muhlenberg College.

11.     At all times material hereto, defendant, Muhlenberg College, acted by and/or through its agents, servants and/or employees.

12.     At all times material hereto, Plaintiff, Jared Cohen was a matriculated student attending college at the facilities of Defendant, Muhlenberg College.

13. At all times material hereto, Plaintiffs, Bruce and Brenda Cohen were the parents of Plaintiff, Jared Cohen and as such, assumed certain financial obligations respecting the cost of providing Plaintiff, Jared Cohen, with a college education. These obligations included, but were not limited to, tuition, room, board, clothing, textbooks as well as various other such expenditures.

14. Muhlenberg College, the Muhlenberg College Board of Trustees, the MC President, the MC Vice President and Rudolph Ehrenberg are sometimes designated collectively as the "MC defendants" in this Complaint.

## JURISDICTION AND VENUE

15. This court has jurisdiction pursuant to 28 U.S.C. §§1331-1332, 20 U.S.C. §§1681-88 and 42 U.S.C. §1988 and 28 U.S.C. §1367.

16. Venue is proper in this District pursuant to 28 U.S.C. §1391, 20 U.S.C. §§1681-88 and 42 U.S.C. §1988. The MC defendants are or govern and operate a college in this District and the events or actions giving rise to the claims occurred in this District.

## BACKGROUND

17. Plaintiffs chose Defendant, Muhlenberg College, as the institution of higher education that Plaintiff, Jared Cohen, would attend based, in large part, upon the reputation of the College and the likelihood that Jared would be in a more favorable economic position after earning a degree from the College.

18. At all times relevant hereto, Defendant, Muhlenberg College, caused to be issued and promulgated in written form, a Student Handbook which included various guidelines, standards, policies and procedures of the institution. The referenced Student Handbook included, more specifically, sections dealing with "Social Regulations" generally

and specifically with the Muhlenberg College Social Code and procedures for dealing with alleged violations of same.  A copy of the relevant portions of the Muhlenberg College Student Handbook pertaining to Social Regulations is attached hereto, marked as Exhibit "A" and incorporated by reference herein as though fully set forth at length.

19.     On or about September 8, 2002, Plaintiff, Jared Cohen, was involved in a social interaction with Abbe Bossert, another student of Defendant Muhlenberg College.

20.     Specifically, beginning in the evening hours of September 7, 2002, and extending into the early morning hours of September 8, 2002, Plaintiff Jared Cohen and Abbe Bossert were on a date and attended a social function at the fraternity house of Plaintiff, Jared Cohen.

21.     While at the referenced fraternity house Plaintiff Jared Cohen and Abbe Bossert discussed returning to Jared's apartment and mutually agreed to leave the fraternity event.

22.     Upon arrival at Plaintiff, Jared Cohen's home, Abbe Bossert indicated that she was not feeling well and vomited.

23.     After being sick, Ms. Bossert advised Plaintiff, Jared Cohen, that she was okay and asked whether she could shower in the Plaintiff's apartment.

24.     Jared and Ms. Bossert went in to Jared's apartment at which time Ms. Bossert undressed and took her shower.

25.     Thereafter, Ms. Bossert got out of the shower and, unbeknownst to Jared, proceeded to get into Jared's bed.

26.     Subsequently, Ms. Bossert called to Jared and requested that he join her in the bed to watch a movie.  Jared complied and at that time discovered that Ms. Bossert was only wearing a tee-shirt.

27.     After the movie began, Jared and Ms. Bossert began to kiss and Ms. Bossert asked Jared, "Do you have a condom?"

28.     Jared replied, "Are you sure?" to which Ms. Bossert replied, "Yes I am."

29.     Shortly thereafter, Jared and Ms. Bossert engaged in consensual sexual intercourse.

30.     Some time after initiation, Ms. Bossert asked Jared to stop which he immediately did.  Jared and Ms. Bossert then fell asleep in Jared's bed.

31.     The following morning, Ms. Bossert, expressed some concern about the fact that she and Jared had been intimate and requested that Jared not talk about this with other people.

32.     That same evening, Jared, Ms. Bossert and several other friends participated in a ritual of theirs and all watched television together while eating dinner.

33.     Sometime thereafter, Ms. Bossert approached officials of Defendant, Muhlenberg College and reported that Jared had sexually assaulted her.

34.     Without any hearing or opportunity to defend against these heinous and false charges, Jared was immediately advised to refrain from any further contact with Ms. Bossert and prohibited from entering upon the premises of Defendant, Muhlenberg College, without prior notice and permission.

35.     MC administrative personnel including defendant, Rudolf Ehrenberg, who were inexperienced and untrained, proceeded to conduct an amateurish investigation into the allegations made by Ms. Bossert.

36.     Upon information and belief, MC personnel were more interested in an orchestrated result than in investigating the facts of the alleged incident.

37.     Defendant, Muhlenberg College's Student Handbook contains a section devoted to Social Regulations and violations thereof.  The Social Regulations section contains language stating that "[t]he rights and property of **all** persons are to be respected regardless of time or place."  See Exhibit "A" at page 53 emphasis added.

38.     At no time relevant hereto did Defendants respect the rights of Plaintiff, Jared Cohen as set forth in detail herein.

39.     The Handbook also provides that "[t]he College may elect, considering the circumstances of the case, to delay on-campus disciplinary action pending the resolution of criminal charges." See Exhibit "A" at page 53.

40.     Defendants negligently and recklessly chose to proceed with the on-campus disciplinary action against Plaintiff, Jared Cohen, despite their knowledge of the pendency of an ongoing criminal investigation into the subject incident.

41.     The Handbook indicates that:

A Judicial Officer serves as a facilitator for the process of handling alleged violations of the Social Code and the Judicial Officer's duties include: 1. The receipt and review of alleged violations of the Social Code with the assistance of Campus Security to determine whether actions sufficient to allege a violation of the Social Code have occurred; 2. The determination of the proper forum to consider the alleged violation; 3. The issuance of a written notice of charge as set forth in Section III. B.; 4. The presentation of a matter in the selected forum; 5. The calling of witnesses; and 6. The performance of other duties as set forth in these Rules and Procedures.

See Exhibit "A" at page 54.

42.     Based upon information and belief, the Judicial Officer has no training or experience in investigating allegations of serious crimes and no standard procedures for referring serious criminal allegations to the proper authorities.

43.     MC negligently failed to conduct an appropriate, balanced investigation of the matter and improperly lodged disciplinary charges against Jared Cohen notwithstanding his denial of the misconduct and despite the absence of any particulars or basis in Ms. Bossert's charge.

44.     The MC Student Handbook, which governs the investigation and processing of alleged violations of the Social Code, fails to establish reasonable procedures and standards for the conduct of these proceedings, including without limitation the quantum of evidence and burden of proof necessary to convict the accused.

45.     The Handbook also provides that "[t]he accused shall have the right to select as a Judicial Advisor a member of the College faculty, management staff or student body to assist the accused in matters involving alleged violations of the Social Code."  See Exhibit "A" at page 55.

46.     The Handbook further provides, "Each year the Vice President of Human Resources will appoint three members of the College Administration to serve as Judicial Advisors.  They are trained to be familiar with these Rules and Regulations for students accused of violating the Social Code.  The accused may also select another (non-trained) member of the College community (see A. above) to serve as a Judicial Advisor.  Accused students will be asked to sign an acknowledgment that he/she did receive a trained Judicial Advisor and the importance of utilizing a trained Judicial Advisor.  No accused, however, will be required to select or consult such advisors."  See Exhibit "A" at page 55.

47.     Plaintiff, Jared Cohen, was not provided an opportunity to select a Judicial Advisor.  Instead, a Judicial Advisor was assigned to Plaintiff, Jared Cohen, with no input into the decision.  The noted Judicial Advisor was not assigned to Plaintiff, Jared Cohen, until

immediately prior to the commencement of the subject disciplinary proceeding.

48.     Plaintiff, Jared Cohen, was not advised that he had the right to reject the Judicial Advisor assigned to him by Defendants and select another Judicial Advisor.

49.     The Handbook further provides, "When criminal charges are pending against the accused, he or she may be accompanied by an attorney; however, the attorney may not address the Committee, the Hearing or Appeals Board, or take part in the hearing and appeal process. …"  See Exhibit "A" at page 55.

50.     Plaintiffs retained Neal Burger, Esquire to represent their interests.  Mr. Burger attended all relevant proceedings along with the Plaintiffs but his involvement was as an observer and consultant.  In the instant matter, forbidding an attorney to participate in the proceedings of the Hearing Board was fundamentally unfair.

51.     Jared Cohen was effectively denied representation at the hearing held by MC. That hearing concerned serious criminal allegations.

52.     MC deliberately chose to deny counsel to Jared Cohen, fully appreciating the consequences of its actions.

53.     The Handbook further provides that "A Judicial Advisor may accompany and consult with the accused; however, the Judicial Advisor may not address the Committee, the Hearing or Appeals Board, or take part in the hearing and appeal process.  See Exhibit "A" at page 55.  Again, in the instant matter, forbidding the Judicial Advisor from participating in the proceedings of the Hearing Board was fundamentally unfair.

54.     The Handbook further provides that "At the beginning of each academic year, the Chair shall select from the Panel . . . Twelve students,, three administrators, and four faculty members to serve on Hearing Boards composed of three students, one administrator,

and one faculty member for those matters requiring formal process.  The faculty member shall also serve as the Presiding Officer of the Hearing Board."  See Exhibit "A" at page 56.

55.     The Handbook further provides that "In conducting a Board Hearing the Presiding Officer shall have the following responsibilities: . . . 11. Permit orderly questioning of witnesses by both the accused and members of the Hearing Board."  See Exhibit "A" at page 58.

56.     Plaintiff, Jared Cohen, was prohibited from engaging in an evenhanded examination of witnesses during Hearing Board proceedings.

57.     The Hearing Board proceedings were conducted unreasonably and arbitrarily.

58.     The Handbook also provides that "Personnel files of suspended students who officially withdraw from the College are retained for five years after the date of withdrawal." See Exhibit "A" at page 61.

59.     The Handbook further provides that "The parents of all students . . . shall be permitted to attend any hearing held pursuant to these Rules and Procedures, but parents shall not be permitted to advise the accused/witnesses or take an active roll in the proceedings on behalf of their son/daughter.  The said parents may be present in the room with their son/daughter only during the time when their child is before a Hearing or Appeals Board.  See Exhibit "A" at page 62.

60.     On November 1, 2002, a Social Judicial Board Hearing was conducted which Hearing Board was composed of three student representatives who formed a majority thereof. In light of the serious nature of the charges being brought against Plaintiff, Jared Cohen, and the pending criminal investigation, the Hearing Board composition was fundamentally unfair.

61.     Prior to the aforementioned Hearing Board proceeding, the processing of Ms.

Bossert's complaint against Plaintiff, Jared Cohen, was handled in what is alleged to be an unfair, prejudicial and biased fashion in that, *inter alia*, Plaintiff, Jared Cohen, was treated essentially as being considered guilty until proven innocent as opposed to Ms. Bossert whose allegations were essentially accepted as true without any scrutiny whatsoever.

62. During the conduct of the aforementioned Hearing Board proceeding, evidence was presented and received by the Hearing Board in what was an unfair, prejudicial and biased fashion. This conclusion is based, in part, upon the manner in which witnesses for the Plaintiff, Jared Cohen, were interrogated versus the manner in which Ms. Bossert's witnesses were interrogated.

63. Further evidence of the unfair, prejudicial and biased conduct of the Hearing Board is found in its treatment of Ms. Bossert. Specifically, the Hearing Board totally disregarded significant portions of the section of the Student Handbook devoted to student sex offenses and literature promulgated on Defendant, Muhlenberg College's, own website in that the Board failed to determine whether Ms. Bossert had complied with any of the numerous recommendations contained therein. Relevant portions of the Student Handbook and literature promulgated on Defendant, Muhlenberg College's, own website are attached hereto and marked collectively as Exhibit "B."

64. The aforementioned Hearing Board found against Plaintiff, Jared Cohen, and recommended a lengthy suspension which was tantamount to expulsion.

65. Various appeals were filed by Plaintiff, Jared Cohen, which ultimately resulted in a reduced period of suspension which still was unwarranted and unjustified and of such length as to effectively constitute expulsion.

66. Prior to the November 1, 2002, hearing, Defendant, Ehrenberg, was intimately

involved in marshaling the process forward.  Defendant, Ehrenberg's involvement took place despite his predisposition to the guilt of Plaintiff, Jared Cohen.

67.    Furthermore, Defendant, Ehrenberg was directly involved in instances of tampering prior to the noted hearing including, but not limited to, interceding with at least one witness that was scheduled to testify as a character witness for Plaintiff, Jared Cohen.

68.    Likewise, Defendant, Ehrenberg, participated in the proceedings involving Jared Cohen despite having been rebuked by one of his superiors in a prior matter involving Jared Cohen.

69.    In addition, Defendant, Ehrenberg, participated in the pre-Hearing processing of the instant matter despite the fact that he would have the opportunity at the conclusion of the Hearing to either approve or disapprove of the Hearing Board's findings in his capacity as Dean of Students.

70.    As the result of the allegations made by Ms. Bossert, a criminal investigation was conducted which ultimately resulted in no formal charges being filed due to a lack of sufficient evidence.

71.    Neither the MC investigation nor the later hearings and appeals regarding the serious criminal allegations against Jared Cohen by the MC defendants were fair, balanced or proper.

72.    MC had no reasonable procedures or standards for eh conduct of proceedings to investigate serious criminal allegations and those procedures it did have were not followed.

73.    MC recklessly violated Jared Cohen's United States Constitutional rights and exposed him to serious criminal penalties.

74.    MC's policies and procedures violate fundamental notions of human decency.

75.     MC discriminated against Jared Cohen by tolerating sexual harassment

against him by its administrators and Ms. Bossert.  By way of example but not limitation, this

action violated the following published provisions of MC's Sexual Harassment Policy:

> It is the policy of Muhlenberg College to provide an environment free from any
> form of sexual or discriminatory harassment.  This policy applies to all College
> full and part-time employees, including management, staff, faculty, and support
> personnel and to all College students, contractors and consultants.  All who
> work at the College are responsible for ensuring that the work and academic
> environment is free from discriminatory practices, including sexual harassment.
> Specifically, the College prohibits any form of unlawful harassment of its
> employees or students based on sex, race, color, religion, national origin, age,
> disability, sexual orientation, marital status or veteran status.  Sexual and other
> forms of discriminatory harassment are unacceptable conduct, whether on the
> College's premises or in any other College related activities and settings, and
> will not be tolerated by the College.  Discriminatory harassment in the
> workplace is also prohibited by law.
> For the purpose of this policy, the term "sexual harassment' includes any
> unwelcome or unwanted sexual attention, sexual advances, requests for sexual
> favors, and other verbal, visual, or physical conduct of a sexual nature or other
> offensive behavior directed toward an employee or student because of or on
> account of his or her gender, whether by a person of the opposite or same
> gender, when: 3. such conduct has the purpose or effect of unreasonably
> interfering with an individual's academic or professional performance; 4. Such
> conduct creates an intimidating, hostile or offensive academic, employment,
> educational or living environment.
> III. Coverage: This policy covers all College students and employees without
> exception.  The College will not tolerate, condone or allow discriminatory
> harassment, whether engaged in by faculty, students, fellow employees,
> supervisors, managers, customers, vendors or other non-employees who
> conduct business with the College.  The College encourages the reporting of all
> incidents of harassment, regardless of who the offender may be.

See Exhibit "A" at pages 74-76

76.     MC violated its contract with the Cohen's by, including but not limited to,

violating MC's stated policies in the Student handbook set forth herein including:

> The Muhlenberg experience embraces diversity, variation, individuality and
> uniqueness, yet also offers a common ground, a joining, and a coming together
> because we are a community.  This balance is difficult to achieve.  New

members, students, faculty and staff join our community every year and because of this we must renew as well as reinvent ourselves every year.  What a wonderful opportunity!  The foundation on which that opportunity is built is already in place: it is our history, both distant and recent: . . .but most importantly, it is our interaction with one another around a core of ideas.  Some of these ideas are presented in this publication, but many are hidden beneath the surface of what goes on here.  Others have yet to be realized.  This is our opportunity together, and it is you opportunity as an individual, to create the Muhlenberg experience anew.

Principles of the Muhlenberg Community: Muhlenberg College, as a church-related, liberal arts college, is guided by certain fundamental principles.  Three principles of particular importance are: . . . Personal Freedom and Responsibility: Muhlenberg College students are both citizens and members of an academic community.  As citizens, they enjoy the same constitutional freedoms as other citizens and are subject to civil law.  As members of the College community, they also have a responsibility to preserve a collegiate environment for the benefit of other students.  Non-Discrimination: Muhlenberg College does not discriminate on the basis of race, color, religion, national, or ethnic origin, gender, sexual orientation, disability or age in the administration of any of its programs or activities, including admissions, financial aid and employment.  All inquiries regarding this policy and complaints of discrimination in violation of this policy may be directed to: Vice President, Human resources . . . Complaints will be handled in accordance with the appropriate procedures established for resolving such complaints as set forth here, as well as in faculty and staff handbooks.  In addition, inquiries concerning the application of Title IX of the Education Amendments of 1972 (prohibiting discrimination on the basis of sex) may be directed to the Assistant Secretary for Civil Rights, U.S. Department of Education.

See Exhibit "A" pages 1-2

Campus Safety and Security . . . .  You are requested to report suspicious or criminal activity *IMMEDIATELY.*

See Exhibit "A" at page 13

Social Regulations: As a residential community Muhlenberg College is fully committed to the total development of its students.  It seeks to provide opportunities through which students can become responsible, mature adults able to function in later years as autonomous, self-actualized human beings.  Muhlenberg College endeavors to teach that membership in an academic community assumes a willingness on the part of the individual to accept certain responsibilities and obligations, otherwise the community cannot survive.  Responsible membership in the Muhlenberg community necessitates personal

and academic honesty, respect for the rights and well-being of each individual and respect for personal and College property.  A student who fails to meet these standards of conduct will be subject to those judicial policies and procedures which the College has established in order to preserve the rights and freedoms of its constituent members.  It shall be understood that, under the Charter and Bylaws of the College, the following regulations operate within the ultimate administrative authority which rests with the President and the Board of Trustees.  All students of the College are expected to conduct themselves at all times in a mature and responsible manner.  The rights and property of all persons are to be respected regardless of time or place.  Failure to comply with College, City, State, or Federal laws and regulations can result in College or civil disciplinary action.

Social Code: Muhlenberg College students are both citizens and members of an academic community.  As citizens they enjoy the same constitutional freedoms as other citizens and are subject to criminal and civil law.  As members of the College community, however, they assume additional obligations.  They bear a responsibility to preserve a collegiate environment which encourages the maximum development of themselves and their fellow students.

See Exhibit "A" at pages 51-52

77.    All individuals involved in the aforementioned disciplinary process acted both individually and/or as the agent(s), servant(s) and/or employee(s) of Defendant, Muhlenberg College.

## COUNT I
## BREACH OF CONTRACT
### Plaintiffs v. Defendant, Muhlenberg College

78.    Plaintiff incorporates by reference herein paragraphs 1 through 77 as though fully set forth at length.

79.    The Plaintiffs and Defendant, Muhlenberg College, entered into a contract.

80.     The referenced contract was governed by various written documents including, but not limited to the aforementioned Student Handbook, relevant portions of which are attached hereto at Exhibit "A."

81.     Part of the contract between the parties involved the conduct of proceedings directed at the investigation and prosecution of alleged Social Code violations.

82.     The conduct of such proceedings and investigations was, at all times relevant hereto, dictated by the written policies, procedures, guidelines and other materials generated, promulgated and disseminated by Defendant, Muhlenberg College and as such, said written contract materials are to be construed in a light most favorable to Plaintiffs herein.

83.     MC owed to the plaintiffs a contractual duty to conduct its judicial proceedings, including investigations relating thereto, with fundamental fairness and to follow the MC Student Handbook.

84.     As documented herein above, defendant, Muhlenberg College, breached its own written policies and procedures and as such, the contract between the parties.

85.     Defendant failed to substantially comply with its own written policies and procedures.

86.     The policies and procedures generated by Defendants as well as their application to the facts and circumstances forming the basis for Plaintiffs' Complaint were fundamentally unfair.

87.     As MC's disciplinary proceedings were irreparably flawed by unreasonable and arbitrary procedural rules (or lack thereof) as described herein and by application of the same, MC breached its contractual obligations to plaintiffs.

88.     As the findings of the Hearing Board, Appeal Board and all other MC personnel involved in this matter were not supported by substantial evidence, MC's sanctioning of Jared Cohen was unreasonable, arbitrary and capricious, amounting to breach of its contractual obligations and resulting in damages to all plaintiffs.

89.     MC owed plaintiffs a duty of good faith and fair dealing which it breached.

90.     As the result of MC's breach of contract, plaintiffs were damaged as set forth herein.

**WHEREFORE**, plaintiffs, Jared, Bruce and Brenda Cohen, demand judgment in their favor and against defendants, and each of them, jointly and severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, together with compensatory, general and special damages,  costs, interest and such other relief as the Court shall deem appropriate.

## COUNT II
## NEGLIGENCE
### (Against All Defendants)

91.     Plaintiff incorporates by reference herein paragraphs 1 through 90 and paragraphs 123 through 129 as though fully set forth at length.

92.     The MC defendants had a duty to protect the well-being and reputation of Jared Cohen through appropriate actions, policies and procedures that encourage responsible behavior on the part of all students within the College community.

93.     The MC defendants had a duty to Jared Cohen to safeguard Jared's ability to attend, make use of and enjoy the facilities and functions of MC without interference or disruption by other students.

94.     The MC defendants had a duty to conduct any investigations and disciplinary proceedings and assess any penalties in such a manner as to protect Jared Cohen's privacy rights.

95.     In proceeding with a disciplinary charge and subsequent sanctioning of Jared Cohen based on false, malicious and unsubstantiated statements by Ms. Bossert to MC officials, the MC defendants breached their duty of care to Jared Cohen.

96.     In proceeding with a disciplinary charge and convening a Hearing Board without taking appropriate action to ensure the protection of Jared Cohen's constitutional and privacy rights, the MC defendants breached their duty of care to Jared Cohen.

97.     The defendants' breach constitutes both the actual and proximate cause of the injuries and damages sustained by Jared Cohen which include, but are not limited to, emotional distress, loss of reputation and peace of mind, diminution of earning capacity, out-of-pocket expenses and consequential damages.

98.     As the direct and proximate result of the conduct of the defendants, Jared Cohen suffered severe emotional distress, pain, anguish, humiliation, embarrassment and various physical manifestations resulting from the emotional distress including, but not limited to, nausea, headaches and sleeplessness.

99.     Solely as the result of the aforesaid injuries, Jared Cohen had been and in the future will be required to incur expenses in seeking and securing medical treatment in an effort to cure himself of his injuries.

100.    Solely as the result of the aforesaid injuries, Jared Cohen has been and in the future may be prevented from attending to his usual and customary occupation and duties, or prevented from undertaking alternative livelihoods to his financial detriment and loss.

101.    By reason of the above, Jared Cohen has been greatly hurt and injured in his good name, fame and reputation, and had been brought into disgrace and disrepute among his neighbors and diverse other persons, who, ever since the speaking and publication of the false, scandalous and defamatory words by defendants, have suspected him of sexual assault and believed him to be deserving of punishment, and have refused to associate with him.

102.    Such conduct was outrageous, willful, wanton and malicious, to the detriment

of Jared Cohen and for the sole benefit of the defendants thereby justifying an award of punitive damages.

**WHEREFORE**, plaintiffs, Jared, Bruce and Brenda Cohen, demand judgment in their favor and against defendants, and each of them, jointly and severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, together with compensatory, general and special damages,  costs, interest and such other relief as the Court shall deem appropriate.

**COUNT III**
**DISCRIMINATION**
**20 U.S.C. §§ 1681-88 – "Title IX"**
**(Against MC)**

103.    Plaintiff incorporates by reference herein paragraphs 1 through 102 as though fully set forth at length.

104.    As a private educational institution that receives federal assistance, MC is required to comply with Title IX, and, therefore, may not allow gender to be a motivating factor in a decision to discipline a student.

105.    MC violated Title IX because it intentionally based its decision to subject Jared Cohen to discipline based on his gender.

106.    In further violation of Title IX, as supported by statements and conduct of participants in the disciplinary process and other pertinent MC officials, and as evidenced by the pattern of decision-making in this matter, Jared Cohen, was not afforded a fair disciplinary process because of his gender, and was thereby denied the benefits of MC's educational program.

107.    By falsely accusing Jared Cohen and supporting Ms. Bossert, the MC defendants and Bossert, who became an agent of MC by her actions, intentionally committed

the following gender-biased acts which are proscribed by MC:

(1b.) Harassment, defined as any behavior that causes undue trouble, worry or torment including, but not limited to, sexual harassment

(3.) Offenses Against the Community
(a.) Any action that infringes on the rights guaranteed to citizens under federal and state constitutions and statutes, including, but not limited to, privacy, free speech, freedom of the press, freedom of religion, freedom of petition, freedom of assembly and protection against discrimination on the basis of race, sex, religion, color, sexual orientation, ethnic or national origin, age or disability.

(4.) Refusing to comply with the procedures which the College has established to enforce academic and social regulations, including, but not limited to, Campus Safety investigation procedures and the Judicial Rules and Procedures.

(5a-b.) Failure to comply with other policies and regulations governing social conduct including, but not limited to, . . . Campus Safety and Security Policy . . . Discriminatory Harassment Policy . . . Sexual Offense Policy . . . Student Alcohol Policy . .
Failure to comply with laws of the United States and the Commonwealth of Pennsylvania and their agencies, and the ordinances and regulations of local governments, including but not limited to, the Commonwealth of Pennsylvania's Controlled Substances Act.

**Exhibit "A" at pages 52-53.**

F. False Testimony
Any student who knowingly lies or gives false testimony during any hearing held pursuant to these Rules and Procedures shall be deemed to have violated the Social Code.

G. Failure to Cooperate
Any student who refuses to cooperate with these Rules and Regulations shall be deemed to have violated the Social Code.

**Exhibit "A" at pages 62-63**
Muhlenberg College encourages students to promptly and accurately report sex offenses to appropriate campus personnel and/or law enforcement officials. Muhlenberg College also encourages victims of sex offenses to seek medical attention and to take steps to preserve evidence for later use in a criminal prosecution and/or disciplinary action against the offender.

C. Medical Attention
If you are the victim of a sex offense, you should seek immediate medical attention to treat injuries, take preventative measures for sexually transmitted diseases and pregnancy, and collect physical evidence.  Campus

Safety (ext. 3110) will provide transportation to the local hospital of choice. . . .

D.  Preserving Evidence

Although sex offenses often make victims want to wash or get rid of anything that may remind them of the offense, it is important to take certain steps to preserve evidence for later law enforcement or disciplinary action.  If you can avoid it, do not wash, use the toilet, or change your clothing or any bed linen that may contain evidence of the offense.  If you do change clothing, place all clothing worn at the time of the offense in a paper bag, not a plastic one.  These items should be taken with you when reporting the incident or seeking medical attention.

V.  Education

Muhlenberg College offers programs and training to promote awareness of rape, acquaintance rape and other sex offenses.

First year student orientation includes a program on potential dangers in their new community, which includes may types of sexual offenses and the reporting of a sexual offense.  During the year, programs on date rape, self defense and assertiveness are offered through formal residence hall programming, through new membe sponsored by the Department of Campus Safety and other offices.

**Exhibit "A" pages 72-74**

1.  Possession and/or consumption of alcoholic beverages is not permitted by persons under the legal drinking age.  Pennsylvania law dictates the legal drinking age to be 21 years or older. . . .

6.  No person shall engage in public drunkenness or alcohol induced disorderly conduct, property destruction, intimidation or otherwise infringe upon the rights or privacy of others.

There is sufficient information that most of the violent crime that takes place on a college campus (assault, acquaintance and date-rape, DUI, and hazing) is committed by individuals under the influence of alcohol.  Accordingly, our highest priority must be to reduce or eliminate alcohol abuse.

**Exhibit "A" at pages 77-79.**

III. Investigation Policy

Students are expected to fully cooperate with all Campus Safety Investigations.

B.  While being interviewed or giving a written statement, students are asked to be truthful and disclose all pertinent and relevant information.

Non-compliance with Campus Safety investigations may be considered a violation of Muhlenberg College's Social Code and result in disciplinary action.

**Exhibit "A" at page 87.**

See also materials marked collectively at Exhibit "B" of plaintiffs' Complaint

108.    Notwithstanding the commission of prohibited acts by Bossert, MC did not investigate Bossert and because of gender bias violated its own policies, regulations and procedures.

109.    By failing and refusing to investigate, charge and/or discipline Bossert for her violation of the Social Code and Regulations (including, but not limited to, failure to comply with sexual offense policies, false statements and admitted under-age consumption of alcohol), and voluntary participation in the events that resulted in Jared Cohen's discipline, MC selectively enforced its policies and procedures on sexual misconduct, unauthorized use of alcoholic beverages and disciplinary proceedings in violation of Title IX inasmuch as its enforcement was gender-biased.

110.    By the foregoing actions and omissions, MC denied Jared Cohen the benefits of, and subjected him to discrimination under, MC's education program in violation of Title IX.

111.    MC is similarly liable under Title IX for the discriminatory actions of any of its agents, servants and/or employees committed within the course and scope of their agency, servancy and/or employment(s).

112.    By initiating and leading the campaign against Jared Cohen, Ehrenbach intentionally denied Jared Cohen the benefits of MC's education program and discriminated against him because of his gender.

113.    MC had actual or at least constructive notice of Ehrenbach's actions and negligently failed to take prompt, effective remedial measures.

WHEREFORE, Jared Cohen, respectfully requests that this Honorable Court enter

judgment in his favor in an amount in excess of One Hundred Fifty Thousand ($150,000.00) dollars on all Counts, award him compensatory and consequential damages for his physical and emotional injuries and injury to his reputation and diminution of his earning capacity, order that MC expunge and correct his disciplinary and academic record, award him punitive damages pursuant to 20 U.S.C. §§ 1681-88, and as otherwise available, costs and attorney's fees and such additional and further relief as this Honorable Court deems appropriate.

**COUNT IV**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**Jared Cohen v. All Defendants**

114.    Plaintiff incorporates by reference herein paragraphs 1 through 113 as though fully set forth at length.

115.    The conduct of the Defendants, was extreme and outrageous.

116.    The conduct of the Defendants, caused Plaintiff to sustain severe trauma including, but not limited to, sleeplessness, anxiety, upset, stomach pain, nausea and other physical manifestations.

117.    As a result of the Defendants' conduct as set forth herein, Plaintiff sustained further injuries including severe shock to the nervous system, some of which or all of which are or may be permanent in nature.  Plaintiff also makes a claim herein for such injuries, damages and consequences of which he has no present knowledge.

118.    As a further result of the Defendants' conduct, Plaintiff has been or will be obliged to receive and undergo medical attention and care and expend various sums of money and/or incur various expenses.

119.    As a further result of the Defendants' conduct, Plaintiff, Jared Cohen, may in

the future suffer severe loss of earnings and impairment of earning capacity.

120.    As a further result of the Defendants' conduct, Plaintiff has experienced severe limitation of the normal pursuits of daily living habits, duties in and about the household and ability to do the normal chores in and about his home and has been and continues to experience difficulty in participating in normal recreational pursuits and his normal lifestyle as he did prior to this incident.

121.    As a further result of this accident, and by reason of injuries sustained, Plaintiff has and may suffer great pain and agony, mental anguish and humiliation and has been and may in the future be hindered from attending to his daily duties and functions and occupations to his great detriment and loss.

**WHEREFORE**, plaintiff, Jared Cohen, demands judgment in his favor and against defendants, and each of them, jointly and severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, together with compensatory, general and special damages, costs, interest and such other relief as the Court shall deem appropriate.

**COUNT V**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**Jared Cohen v. All Defendants**

122.    Plaintiff incorporates by reference herein paragraphs 1 through 121 as though fully set forth at length.

123.    The conduct of the Defendants and their actions as described above, were due entirely to carelessness, recklessness and negligence of the Defendants and/or their agents, servants and/or employees and consisted of the following:

    a.    Failing to have regard for the ramifications of their unfair, prejudicial and biased conduct upon the Plaintiff;

b.      Failing to have regard for the damage to Plaintiff's physical and mental status that would result due to their conduct;

c.      Failing to exercise a reasonable degree of care in the unfair, biased and prejudicial handling of the disciplinary case against Plaintiff, Jared Cohen;

d.      Failing to act with due regard for the rights of Plaintiff, Jared Cohen in the unfair, biased and prejudicial handling of the disciplinary case against him;

e.      Negligently failing to adhere to their own written policies, guidelines and procedures;

f.      Failing to conduct a fair and impartial process for resolving claims made by Abbe Bossert against Plaintiff, Jared Cohen;

g.      Failing to allow Plaintiff, Jared Cohen, to participate in the selection of a Judicial Advisor;

h.      Failing to timely provide Plaintiff, Jared Cohen, with a Judicial Advisor;

I.      Humiliating Plaintiff, Jared Cohen, by treating him as though he were guilty until proven innocent;

j.      Prohibiting Plaintiff, Jared Cohen, from gaining entry upon their premises immediately after Ms. Bossert made a complaint against him without providing him an opportunity for a fair and impartial hearing;

k.      Failing to lend proper weight to the fact that Plaintiff, Jared Cohen, was exonerated of all charges made against him by the local police authorities;

l.      Failing to postpone their own disciplinary process pending the outcome of the already initiated criminal investigation against Jared;

m.     Imposing unwarranted and/or excessive punishment for alleged violations of the Defendants' Social Code;

n.     Treating witnesses testifying in behalf of Plaintiff disparately from those presented in behalf of his accuser;

o.     Disregarding conflicting testimony of Plaintiff's accuser;

p.     Assaulting the Plaintiff;

q.     Battering the Plaintiff;

r.     Allowing Plaintiff, Jared Cohen's, accuser and her family to direct and/or influence their decision making process with respect to the handling of the disciplinary process against him;

s.     Negligence per se;

t.     Being otherwise negligent; and

u.     Such other acts of negligence, carelessness and/or recklessness as shall appear through the course of discovery and/or the trial of the instant action.

124.    The conduct of the Defendants caused Plaintiff to sustain severe trauma including, but not limited to, sleeplessness, anxiety, upset, stomach pain, nausea and other physical manifestations.

125.    As a result of the Defendant's negligence as set forth herein, Plaintiff sustained further injuries including severe shock to the nervous system, some of which or all of which are or may be permanent in nature.  Plaintiff also makes a claim herein for such injuries, damages and consequences of which he has no present knowledge.

126.    As a further result of the negligence of the Defendants, Plaintiff has been or will be obliged to receive and undergo medical attention and care and expend various sums of

money and/or incur various expenses.

127.   As a further result of the negligence of the Defendants, Plaintiff has in the past and/or may in the future suffer severe loss of earnings and impairment of earning capacity.

128.   As a further result of the negligence of the Defendants, Plaintiff has experienced limitation of the normal pursuits of daily living habits, duties in and about the household and ability to do the normal chores in and about his home and is unable to fully participate in normal recreational pursuits and his normal lifestyle as he did prior to this incident.

129.   As a further result of the negligence of the Defendants, and by reason of injuries sustained, Plaintiff has and may suffer great pain and agony, mental anguish and humiliation and has been and may in the future be hindered from attending to his daily duties and functions and occupations to his great detriment and loss.

**WHEREFORE**, plaintiff, Jared Cohen, demands judgment in his favor and against defendants, and each of them, jointly and severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, together with compensatory, general and special damages, costs, interest and such other relief as the Court shall deem appropriate.

## COUNT VI
## VIOLATION OF COMMON LAW DUE PROCESS
### (Jared Cohen v. MC Defendants)

130.   Plaintiff incorporates by reference herein paragraphs 1 through 129 as though fully set forth at length.

131.    The actions of the Hearing Board and the MC defendants in disciplining Jared Cohen were arbitrary and capricious.

132.    MC must afford its students disciplinary procedures which are fair and reasonable and which lend themselves to an even-handed, reliable determination.  These procedures must ensure that students are not deprived of their right to a higher education by unfair and erratic disciplinary proceedings.

133.    The procedural rights to which Jared Cohen is entitled under this standard of protection include, at a minimum, full notice of the charges against him, the opportunity to be heard at all meetings and hearings where these charges are deliberated, the right to counsel at any formal or informal hearing, and the right to have the charges considered by an impartial, unbiased tribunal.

134.    Jared Cohen was not, and never has been, afforded a full opportunity to be heard in defense of the charges made against hi.

135.    Jared Cohen was denied the right to counsel at any formal of informal hearing - - in fact the MC Student Handbook drastically limits the scope and extent of any participation by counsel in behalf of an accused.

136.    It is believed, and therefore averred, that the Hearing Board which conducted the hearing in Jared Cohen's case was neither impartial nor unbiased as they were influenced by defendant Ehrenberg who was involved in the investigation and discipline of Jared Cohen in this matter.

137.    As the result of the aforementioned acts and omissions, the MC defendants failed to provide Jared Cohen with the fundamental, minimal protections of common law due process.

**WHEREFORE**, plaintiff, Jared Cohen, demands judgment in his favor and against defendants, and each of them, jointly and severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, together with compensatory, general and special damages, costs, interest and such other relief as the Court shall deem appropriate.

### COUNT VII
### CONSUMER PROTECTION ACT CLAIM
### Plaintiffs v. All Defendants

138.    Plaintiffs incorporate by reference herein paragraphs 1 through 137 as though fully set forth at length.

139.    Plaintiffs purchased educational services from defendants for personal, family or household purposes.

140.    Defendants' conduct as set forth in all the preceding paragraphs constitutes unfair and/or deceptive acts or practices within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection law, 73 Pa. C.S.A. § 201-1 et seq and/or its state of New Jersey counterpart.

141.    Plaintiffs suffered an ascertainable loss of money or property as the result of the defendants' conduct.

142.    Plaintiffs are entitled to recover their actual damages and up to three times the actual damages sustained.  73 Pa. C.S.A. § 201-9.2.

143.    Plaintiffs' actual damages are described herein.

144.    Defendants are subject to liability for damages caused to plaintiffs by the wrongful acts of their agents, servants and/or employees, who were acting within the ordinary course of their business or with the authority of defendants to do so.

WHEREFORE, plaintiffs seek from defendants, and each of them jointly, and severally, damages in excess of $150,000.00, before trebling, costs of suit, attorneys' fees, interest, and such further relief as the Court deems proper.

## COUNT VIII
## DAMAGES
### Plaintiffs v. All Defendants

145.     Plaintiffs incorporate by reference herein paragraphs 1 through 144 as though fully set forth at length.

146.     Due to the Defendants' breach of contract and other related conduct, as well as the proceedings involved and the serious nature of the acts alleged, Plaintiffs sustained damages as alleged herein above.

147.     As a further result of the Defendants' breach of contract and other related conduct, Plaintiffs were forced to retain the services of an attorney to whom fees were paid.

148.     As a further result of the Defendants' breach of contract and related conduct herein, Plaintiffs were forced to pay additional and/or unnecessary expenses for room and board for Jared Cohen.

149.     As a further result of the Defendants' breach of contract and related conduct herein, Plaintiffs were forced to expend monies for the treatment of physical and emotional trauma which they sustained.

150.     As a further result of the Defendants' breach of contract and related conduct herein, Plaintiff, Jared Cohen, was forced to transfer to an alternate school.  When Jared transferred, credits which he had previously earned were lost.  The loss of these credits has added approximately one year to the time which will be required for him to obtain his

undergraduate degree.

151.    As the result of this additional time required to obtain his undergraduate degree, Plaintiff, Jared Cohen, has been deprived the opportunity to enter the workforce by that same one year period with an accompanying loss of income.

152.    As a further result of the Defendants' breach of contract and related conduct herein, the determination of the Hearing Board has become a part of Plaintiff, Jared Cohen's, permanent scholastic record.  As a consequence, any graduate school and/or employer seeking a transcript of Jared's record at Muhlenberg College will be privy to the disciplinary action taken by Defendants.

**WHEREFORE**, plaintiff, Jared Cohen, demands judgment in his favor and against defendants, and each of them, jointly and severally, in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars, together with compensatory, punitive, general and special damages,  costs, interest and such other relief as the Court shall deem appropriate.

**GORDON & WEINBERG**

BY: _____
**DEAN I. ORLOFF, ESQUIRE**
**Attorneys for Plaintiffs**